709 So.2d 243 (1998)
Billy Wayne DIEZ and Sheila Diez
v.
SCHWEGMANN GIANT SUPERMARKETS, INC.
No. 97 CA 0034.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*244 Eddie J. Lambert, Gonzales, for Plaintiff-Appellant Billy Wayne Diez.
Michael W. McKay, Baton Rouge, for Defendant-Appellee.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
FOGG, Judge.
In this personal injury suit, plaintiff, Billy Wayne Diez, appeals a jury verdict in favor of defendant, Schwegmann Giant Supermarkets, Inc. For the reasons set forth below, we affirm.
On January 14, 1991, while plaintiff and his wife, Sheila Diez, were shopping at a local Schwegmann supermarket, plaintiff slipped on a liquid substance and fell, seriously injuring his back. Following the fall, plaintiff was unable to move and was transported to a hospital by ambulance.
Plaintiff filed the instant suit against defendant in April of 1991 to recover damages for injuries sustained in the accident. His wife joined in his suit asserting a claim for loss of consortium. The case was initially tried by a jury on May 22 and 23, 1993. The jury returned a verdict in favor of plaintiff, and defendant appealed the judgment. On appeal, this court found the general verdict was in conflict with specific jury interrogatory answers; consequently, the judgment of the trial court was vacated, and the matter was remanded for retrial. See Diez v. Schwegmann Giant Supermarkets, Inc., 94-1089 (La.App. 1 Cir. 6/23/95); 657 So.2d 1066, writ denied, 95-1883 (La.11/17/95); 663 So.2d 720.
The matter was subsequently retried before a jury on May 9 and 10, 1996. After deliberating, the jury returned a verdict in favor of defendant finding the supermarket was not liable because it did not create or have actual or constructive knowledge of the condition which caused plaintiff's fall. In accordance with the verdict, the trial judge signed a judgment dismissing plaintiff's action. Thereafter, plaintiff filed motions for judgment notwithstanding the verdict and for new trial which were denied by the trial judge. Plaintiff now appeals.
In his first assignment of error, appellant asserts the trial court erred in finding defendant did not create or have actual or constructive notice of the condition which led to his injuries. Appellant's cause of action is governed by LSA-R.S. 9:2800.6, as revised in 1990, which was in effect at the time of this accident.[1] That statute provides, in pertinent part, as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing *245 in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
Thus, to recover under this statute, appellant had the burden of proving he slipped and fell due to a condition on defendant's premises which presented an unreasonable risk of harm, the risk of harm was reasonably foreseeable, defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence, and defendant failed to exercise reasonable care.
The record clearly establishes this slip and fall accident was due to a condition, presumably liquid detergent or soap, existing on defendant's premises which presented an unreasonable risk of harm which was reasonably foreseeable. The record, however, contains no evidence that any employee of the store either created or had actual notice of the presence of the condition. Therefore, this case turns on the question of whether defendant had constructive notice of the substance prior to the accident, i.e., whether the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. LSA-R.S. 9:2800.6(C)(1).
The issue of proving constructive notice under LSA-R.S. 9:2800.6 (1990) was recently addressed by our supreme court in White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97); 699 So.2d 1081. In that case, the court overruled its earlier decision in Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95); 655 So.2d 309, in which it had concluded a claimant had carried her burden of proving constructive notice by showing the absence of written inspection procedures, the lack of written documentation of the performance of inspections, and the lack of company directives on a consistent inspection policy. In White, the supreme court determined Welch had erroneously shifted the burden to the merchant to prove it acted reasonably, stating, "The fatal flaw in the Welch decision is that there was no showing of any period of time as required by the statute." White v. Wal-Mart Stores, Inc., 97-0939, p. 5; 699 So.2d at 1085. The court then concluded:
Constructive notice, at issue here, is defined by Section (C)(1). The definition is... clear and unambiguous. There is a temporal element included: "such a period of time ..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall ...
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time ..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden....
White v. Wal-Mart Stores, Inc., 97-0393, pp. 4-5; 699 So.2d at 1084-1085. See also Beninate v. Wal-Mart Stores, Inc., 97-802 (La. App. 5 Cir. 12/10/97); 704 So.2d 851, (discussing the supreme court's opinion in White).
Seven witnesses, including appellant, Mrs. Diez, four Schwegmann employees, and an emergency medical technician, testified at trial on the issue of liability. Their testimony is summarized below.
*246 Appellant testified he and Mrs. Diez arrived at the Schwegmann store at about 1:30 p.m. to purchase some grocery items. He stated that, after entering the supermarket, they selected flowers from the flower department located at the front of the store and then proceeded to the grocery aisles. Appellant stated he left his wife on aisle 12-B while he went to find catsup. According to his testimony, after searching unsuccessfully for the catsup for approximately five to eight minutes, he became frustrated and decided to return to the aisle where he left his wife. As he approached Mrs. Diez, appellant slipped and fell. He stated he saw nothing on the floor prior to the fall, but after the fall he felt a greasy or soapy liquid.
Mrs. Diez also testified she and appellant arrived at the supermarket at approximately 1:30 p.m. She stated they selected flowers from the flower department and then proceeded to aisle 12-B. She testified she stopped on this aisle to look at pantyhose while her husband went to find catsup. She explained aisle 12-B displayed pantyhose on the right side and powder and liquid detergents on the left. Mrs. Diez stated she remained on this aisle for approximately seven or eight minutes when appellant returned to find her, and he fell. She further stated that, during the time she remained on aisle 12-B, she never saw anyone inspect the aisle. Although Mrs. Diez did not indicate what specific time she believed her husband fell, she testified EMS arrived about thirty minutes thereafter.
Rhonda Rhea testified she was employed by defendant at the time of this incident as a porterette.[2] She explained she was responsible for cleaning half of the supermarket, including the grocery aisles, checkout lanes and entrance, and it took her approximately thirty minutes to clean her side of the store. Ms. Rhea recalled checking aisle 12-B at 2:00 p.m., which she determined to be approximately ten minutes prior to appellant's fall. Ms. Rhea stated that, although aisle 12-B was considered a hazardous aisle, she was not required to patrol this aisle more than any other. She remembered cleaning two powder detergent spills on this aisle earlier in the day. She testified the store's fluorescent lighting reflected off the floor, sometimes making it difficult to notice spills. Ms. Rhea acknowledged the liquid substance in which appellant slipped would have been difficult to see, but she maintained the aisle was clear when she last checked it at 2:00 p.m., shortly before the accident. She noted the substance in which appellant fell appeared slippery and it took three or four moppings to remove it from the floor. Ms. Rhea also testified that, following the fall, photographs were taken of the scene, and she contended EMS arrived about fifteen to twenty minutes after the accident occurred.
Gary Veade, the store manager, testified the supermarket was approximately 60,000 square feet and it had terrazzo flooring, which was kept highly polished. He also testified the store did not maintain sweep logs. Mr. Veade stated he was responsible for periodically patrolling the grocery aisles to search for spills, but he could not recall the specific time he inspected aisle 12-B prior to this incident. According to Mr. Veade, the accident occurred at 2:10 p.m. He stated that, when he went to assist appellant, he observed a light blue liquid in the area of the fall. Mr. Veade denied any photographs were taken, and he testified EMS arrived fifteen to twenty minutes after the fall.
James Crump, defendant's loss prevention supervisor, testified he, too, was required to patrol the aisles of the store to look for hazardous conditions; however, he also could not recall the last time he inspected aisle 12-B prior to the accident. He stated he was notified of the accident at approximately 2:10 p.m. Mr. Crump stated he observed a soapy, blue liquid at the location of the fall, which he admitted would have been difficult to see. In connection with this incident, Mr. Crump completed a customer accident report, in which he cited the origin of the substance as "unknown." He stated the substance appeared to be liquid detergent or soap, but when he checked the shelves for leaking containers, he found none. He acknowledged *247 that, when he questioned Ms. Rhea after the fall concerning what time she cleaned aisle 12-B, she told him she was uncertain of the exact time, but she stated it had been about ten minutes prior to the accident. He testified he could not remember photographs being taken of the scene and EMS arrived within ten to fifteen minutes after the fall.
Joseph Warnke, defendant's director of loss prevention, testified defendant did not maintain sweep logs or any other records of its cleaning procedures at the time of this accident. He explained the practice of logging had been utilized in the past and had proved too time-consuming.
Further testimony was given by Guy Fruge, the emergency medical technician who assisted appellant after the fall. According to his testimony, he received a call concerning this incident from his dispatcher at 2:07 p.m., and he arrived at the supermarket at 2:14 p.m.
The jury, having evaluated the testimony of the witnesses, determined appellant failed to prove either defendant or its employees had created or had actual or constructive notice of the condition which caused appellant's fall. Undoubtedly, this determination was based on the jury's decision to credit the testimony of defendant's employees that the accident occurred at about 2:10 p.m., that the aisle was inspected approximately ten minutes prior thereto, and that the aisle was found to be clear at the time of the inspection. Appellant contends this testimony, particularly that of Ms. Rhea, was not credible as it was contradicted by the testimony of Mrs. Diez and Mr. Fruge.
A trial court's determination of whether a merchant had actual or constructive notice of a condition creating an unreasonable risk of harm to its customers is a factual finding which may not be set aside absent a showing of manifest error. Stewart v. Great Atlantic and Pacific Tea Co., 94-1592 (La.App. 4 Cir. 3/16/95); 657 So.2d 1327. Under the manifest error standard, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Additionally, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of the trier of fact. Rosell v. ESCO, 549 So.2d at 844.
Our thorough review of the record reveals appellant presented no evidence as to the length of time the condition existed prior to the fall; thus, appellant did not carry the burden of proving constructive notice as mandated by LSA-R.S. 9:2800.6 (1990). While positive proof of "such a period of time..." may not be an impossible burden (as noted by the supreme court in White), it is certainly an onerous one. Nonetheless, we are constrained to require compliance with the applicable statutory and jurisprudential law. The jury determined, under the particular facts and circumstances of this case, that appellant failed to prove defendant had constructive notice of the condition prior to the fall, and we cannot conclude this determination was manifestly erroneous or clearly wrong.
Alternatively, appellant urges the trial judge improperly denied his motions for JNOV and for new trial. He asserts the trial judge should have granted these motions because the jury's verdict was contrary to the law and evidence and no reasonable trier of fact could have made the jury's conclusions.
A JNOV is authorized under LSA-C.C.P. art. 1811 and is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable men could not arrive at a contrary verdict. Anderson v. NOPSI, 583 So.2d 829 (La.1991). In reviewing a decision of the trial court, the appellate court must determine whether the trial court *248 committed manifest error or was clearly wrong in denying the motion. Broussard v. Stack, 95-2508 (La.App. 1 Cir. 9/27/96); 680 So.2d 771.
LSA-C.C.P. art. 1972 provides the trial court shall grant a motion for new trial when the verdict appears clearly contrary to the law and evidence. LSA-C.C.P. art. 1973 provides discretion for the trial court to grant a motion for new trial if good grounds exist. The trial court's discretion is great and will not be disturbed on appeal absent an abuse of that discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La. App. 1 Cir. 3/11/94); 634 So.2d 466, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094.
We have conducted an exhaustive review of the record before us and cannot say the trial judge was clearly wrong in denying the motion for JNOV. Similarly, we are also unable to conclude the trial judge abused his discretion in denying the motion for new trial.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellants, Billy Wayne Diez and Sheila Diez.
AFFIRMED.
NOTES
[1] We note that the legislature has since amended LSA-R.S. 9:2800.6 by Acts 1996, 1st Ex.Sess., No. 8, § 1, effective May 1, 1996. The amended statute expressly applies only to causes of action arising on or after the effective date.
[2] Porterettes were employed to push a cleaning cart up and down each aisle, continuously looking for spills and other hazardous conditions.