I «GUIDRY, Judge.
This matter involves the appeal of a judgment granting a motion for judgment notwithstanding the verdict (JNOV) and the conditional granting of a motion for new trial in a case of the alleged sexual abuse of a minor child. Based on the discussion that follows, we reverse.
FACTS AND PROCEDURAL HISTORY
In the latter part of 1991, D. McClary, then Wells, left her husband in Abilene, Texas, and returned to her hometown of Lacombe, Louisiana, with her three minor daughters, BLM, TMM, and ALM. On returning to Lacombe, Mrs. McClary began working at the Burger Hut, a local fast food restaurant, where she met and became acquainted with the defendant, Merrill R. Schiro, Sr. Although both of them were married, Mr. Schiro asked Mrs. McClary out on a date. Shortly after she began dating Mr. Schiro, Mrs. McClary returned to her husband in Texas. However, she soon decided that she could no longer live with her husband, who allegedly physically abused her. Mr. Schiro drove a pick-up truck to Texas, accompanied by Mrs. McClary’s younger sister, to bring Mrs. McClary and her three daughters back to Lacombe. Mrs. McClary and Mr. Schiro then continued openly dating for approximately two years until Novem *400 ber 12, 1993. Then Mrs. McClary filed charges against Mr. Schiro for allegedly sexually molesting her daughter BLM. BLM was between the ages of six and eight years old during the period of alleged sexual abuse. Mr. Schiro was arrested on December 3, 1993, in conjunction with these charges; however, the district attorney declined to prosecute him.
On March 3, 1997, Mrs. McClary filed suit against Mr. Schiro and Acme Machine & Welding, Inc. (Acme)' for the alleged sexual molestation of her minor daughter, BLM. Acme was a family-owned business where Mr. Schiro was employed. Prior to answering the petition, the defendants, Mr. Schiro and Acme, | sfiled exceptions of prescription and no cause of action, which were denied by the trial court. On October 28, 1997, a joint motion to dismiss the lawsuit, only with respect to claims brought on behalf of BLM’s sisters, was granted by the trial court, and it was ordered that “the petition of [D.] McClary as natural tutrix on behalf of [the sisters of BLM]” be dismissed with prejudice.
On February 8, 1999, Acme filed a motion for summary judgment seeking dismissal of plaintiffs’ claims against it based on vicarious liability, La. C.C. art. 2320. Following a hearing on the motion, the trial court granted the motion in favor of Acme. The appeal of that judgment by Mrs. McClary is addressed in an unpublished opinion, McClary v. Schiro, 99-2803 (La.App. 1st Cir.3/30/01), also handed down this date.
On April 5-6, 1999, a trial by jury was held, at the conclusion of which the jury found in favor of Mr. Schiro and against the plaintiffs and answered the pertinent interrogatories contained in the special jury verdict form as follows:
1. Do you find that the plaintiff, the minor child, [BLM], was a victim of sexual abuse?
Yes [x] No
[[Image here]]
2. Do you find that the defendant, Merrill R. Schiro, Sr., committed that sexual abuse of the plaintiff, the minor child, BLM?
Yes No [x]
Following the signing of the judgment in accordance with the jury’s verdict, Mrs. McClary filed a motion for JNOV or in the alternative, for a new trial, which following a hearing, was granted by the trial court. Upon finding Mr. Schiro liable for the sexual molestation of BLM, the trial court made the following awards as damages: $100,000.00 in general damages to BLM; $15,000.00 in special damages to BLM; $10,000.00 for loss of consortium for Mrs. McClary, and $100,000.00 in punitive dám-ages to BLM and Mrs. McClary. In its judgment, the 14trial court also conditionally granted plaintiffs’ alternative motion for new trial in the event the JNOV was vacated or reversed on appeal. On October 25, 1999, Mr. Schiro appealed the judgment granting the JNOV and conditionally granting the motion for new trial.
ASSIGNMENTS OF ERROR
On appeal, Mr. Schiro contests the granting of the JNOV by pointing out several facts and inferences in the record that he argues would preclude a finding that the evidence so strongly and overwhelmingly favors the plaintiffs as to warrant the granting of a JNOV. Mr. Schiro further argues that the trial court erroneously granted the motion for new trial since none of the grounds listed under La. C.C.P. arts. 1972 and 1973 had been met.
DISCUSSION

Judgment Notwithstanding the Verdict

In Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, the *401 Louisiana Supreme Court discussed the law and standard of review applicable to a JNOV:
La.Code of Civil Procedure art. 1811(F) is the authority for a JNOV. This article provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both. The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences | Bor factual questions should be resolved in favor of the non-moving party.
The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review.
Davis, 00-0445 at 5-6, 774 So.2d at 89. (citations omitted). Once the trial court determines that JNOV is proper, it must render a de novo award based on its independent assessment thereof. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 833 (La.1991); Thibodeaux v. Wal-Mart Stores, Inc., 98-0556, p. 2 (La.App. 1st Cir.4/1/99), 729 So.2d 769, 771, writ denied, 99-1244 (La.6/18/99), 745 So.2d 28.
In his reasons for judgment, the trial court stated that it was granting the JNOV based on the jury’s inconsistent verdict finding that BLM had been sexually abused, yet finding that Mr. Schiro was not the perpetrator of that abuse. Specifically, the trial court stated that “[t]he jury heard no testimony as to any other possible perpetrator except for vague references to [BLM’s] maternal grandfather.”
At trial, Mrs. McClary admitted to being sexually molested by her father from age 12 to age 18. However, she stated that although she and her three daughters lived with or close to her parents during part of the two-year period in which BLM was allegedly sexually molested, she claimed her daughters were never left alone in her father’s company. She further explained that either her mother or sister was present with the girls when she was not at home,, but admitted that there were times she was not there to verify this arrangement.
Mr. Schiro, in brief, points specifically to two alleged incidents of abuse that could have affected the jury’s credibility determinations. Mr. Schiro first points to | ^testimony concerning the first act of sexual abuse allegedly committed by him which supposedly took place during the thirteen-hour trip from Abilene, Texas, *402 when Mr. Schiro brought Mrs. MeClary and her daughters back to Lacombe. Mr. Schiro drove the entire way, and all of the passengers were seated on the bench seat in the truck cab. The seating arrangements, from left to right, were Mr. Schiro, BLM, Mrs. MeClary and Mrs. McClary’s sister. The two youngest girls were seated on the laps of Mrs. MeClary and her sister. At some point during the trip, Mr. Schiro allegedly told BLM to repeatedly squeeze his penis while he was driving. Mrs. MeClary, who was seated next to BLM, was allegedly sleeping and did not witness this event.
A second instance, testified to by BLM and Mrs. MeClary, occurred while the family was staying in a motel with Mr. Schiro. Mrs. MeClary, who during this period of time resided with a married aunt, as well as her parents, would occasionally stay in motels with Mr. Schiro. On some of these occasions, Mrs. McClary’s three girls would stay with them. When the girls accompanied them, the girls would sleep in one of the double beds provided and Mrs. MeClary and Mr. Schiro in the other. However, on at least one occasion, Mrs. MeClary allegedly left the bed she shared with Mr. Schiro and got in bed with the girls because of the fretting of the youngest child. Mr. Schiro then allegedly called or brought BLM from the other bed to his bed where he molested her and then told her to return to the other bed. Mrs. MeClary again allegedly slept through the entire incident and did not realize what had taken place. All other acts of molestation allegedly occurred in different trucks driven by Mr. Schiro, but owned by Acme, when he dropped BLM off or picked her up from school for Mrs. MeClary.
It was not until after Mrs. MeClary had moved into her own home, a mobile home, that she allegedly realized that Mr. Schiro was sexually abusing BLM. Mrs. 17McClary stated that on the day she filed the charges against Mr. Schiro, she suspected him of sexual misconduct because he insisted on going to Kmart with BLM rather than fix her broken toilet. Initially, Mr. Schiro had attempted to take all three girls, but either one or both of the younger girls started crying, so he brought them back to Mrs. MeClary. Mrs. McClary’s testimony conflicted with that of BLM concerning this incident, since BLM had stated that Mr. Schiro never attempted to take the two younger girls but insisted that only she go with him to Kmart. After returning from Kmart, BLM went straight to her room, and Mrs. MeClary allegedly ordered Mr. Schiro out of her home because of her suspicions. She then supposedly questioned BLM, who after initially denying any abuse, then admitted that Mr. Schiro had molested her. However, Mr. Schiro testified that the reason Mrs. MeClary filed charges against him that day was because he had just told her that his wife had given him an “ultimatum” and therefore he was ending his relationship with Mrs. MeClary. Mr. Schiro’s wife corroborated this testimony.
Finally, there was testimony at trial that Mr. Schiro never had actual intercourse with BLM and, therefore, there was no physical proof of the molestation. However, there was expert testimony by a board certified social worker to support the finding that BLM had been sexually abused.
The trial court found it unreasonable that the jury did not find that Mr. Schiro had abused BLM when no evidence as to any other possible perpetrator had been presented. However, as noted above, the record reveals that some indirect evidence was presented to point to the maternal grandfather or someone else, as the possible perpetrator. This, coupled with the questionable nature of some of the alleged acts of molestation related by *403 BLM, and the showing of a possible motive on the part of Mrs. McClary for bringing suit, i.e., the termination of their relationship by Mr. Schiro, could reasonably account for the finding made by the jury. Therefore, considering the evidence opposed to the motion for JNOV, we |Rfind that it was of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Accordingly, we reverse the granting of the JNOV by the trial court.

Alternative Motion for New Trial

In the alternative motion for new trial, Mrs. McClary requested that the trial court grant the motion on the basis of La. C.C.P. art,1972(l) and (2), and the trial court exercised its discretion under La. C.C.P. art.1973 as a further basis for granting the motion. Those articles provide the following:
Art. 1972. Peremptory grounds
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
Art. 1973. Discretionary grounds
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
In a motion for new trial under either La. C.C.P. art.1972 or 1973, the trial judge may evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and evaluate witness credibility to determine whether the jury had erred in giving too much credence to an unreliable witness. Drury v. American Honda Motor Co., Inc., 93-1414, p. 64 (La.App. 1st Cir.12/22/94), 659 So.2d 738, 773, writ denied, 95-1012 (La.6/23/95), 660 So.2d 437. The trial court’s discretion in deciding whether to grant the motion is great and will not be disturbed on appeal absent an abuse of that discretion. Diez v. Schwegmann Giant Supermarkets, Inc., 97-0034, p. 9 (La.App. 1st Cir.2/20/98), 709 So.2d 243, 248.
|3The fact that a determination on a motion for a new trial involves judicial discretion does not imply that the trial court can freely interfere with any verdict with which it disagrees. Davis, 00-0445 at 10, 774 So.2d at 93. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury’s factual determinations and must be viewed in that light. Thus, the jury’s verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Engolia v. Allain, 625 So.2d 723, 729 (La.App. 1st Cir.1993).
Based on our previous discussion concerning the JNOV, it would appear that La. C.C.P. art. 1972(1) is inapplicable as a basis for granting the motion. The peculiarity of some of the circumstances of alleged molestation, the conflicting reasons given for why Mrs. McClary filed charges against Mr. Schiro, in addition to questions concerning the possibility of abuse by someone else could result in the fair determination that Mr. Schiro was not the perpetrator of the sexual molestation suffered by BLM. Thus, the verdict, based on this evidence, is not clearly contrary to the evidence.
In regards to granting the motion based on La. C.C.P. art. 1972(2), that new evidence has been discovered since the *404 trial, the affidavit and testimony of Kristen Pendleton, a young woman who had attended a daycare operated by Mrs. Sehiro when she was seven years old, was presented by Mrs. McClary. She testified that once, when she was seven years old, Mr. Sehiro allegedly, while holding her on his lap, started rubbing her back under her shirt and then placed his hand a “little ways” down the back of her shorts. She moved away from him upon this occurrence and later reported the incident to her mother, who withdrew her from the daycare based on this alleged incident. Miss Pendleton also related another incident in which Mr. Sehiro allegedly made “cat calls” to her as she passed in front of his welding shop; she was thirteen at the time of the second incident. Mrs. ImMcClary argues that Miss Pendleton was a minor at the time she learned of her story, and that Miss Pendleton’s mother asked that Miss Pendleton not be involved. Despite this evidence, we find that it cannot stand as a basis for granting Mrs. McClary a new trial under La. C.C.P. art. 1972(2) because, by her own testimony, Mrs. McClary admitted having knowledge of the incident prior to trial. Therefore, granting the plaintiffs a new trial to allow them to introduce new testimony that was clearly available during the original trial was an abuse of the trial court’s discretion. See Rosenkrantz v. Baton Rouge Psychological Associates, 94-2340, p. 8 (La.App. 1st Cir.6/23/95), 657 So.2d 1353, 1357, writ denied, 95-2251 (La.11/17/95), 663 So.2d 707, writ not considered, 95-2392 (La.11/17/95), 663 So.2d 707. Accordingly, on this basis, the motion for new trial should have been denied.
Finally, for the reasons discussed above, the record before us does not contain evidence sufficient to form a valid basis for the granting of the new trial under La. C.C.P. art. 1973. This matter basically involved a weighing of testimony. Apparently, the jury found credible testimony regarding the fact that BLM was sexually abused, but had difficulty believing that Mr. Sehiro was the perpetrator. This may, in part, be due to the insinuations that BLM’s maternal grandfather or someone else could have been the perpetrator. Furthermore, BLM and Mrs. McClary’s versions of the events may have been viewed by the jury as questionable at times and were controverted by Mr. Schi-ro. A new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. McCray v. J/H/J, Inc., 99-2283, p. 7 (La.App. 1st Cir.11/3/00), 769 So.2d 1273, 1277. After a thorough review of the facts in this matter, we cannot say that the jury’s finding would result in a miscarriage of justice. Accordingly, we-find that the trial court abused its discretion in this instance. Therefore, we reverse the conditional granting of the motion for new trial by the trial court.
I ¶ i CONCLUSION
For the foregoing reasons, we reverse the JNOV granted by the trial court and its conditional granting of the motion for new trial and reinstate the judgment of the trial court in accordance with the jury’s verdict. All costs of this appeal are to be borne by the appellees, Mrs. McClary, individually and as natural tutrix of BLM.
REVERSED.