CARTER, C.J.
| ¿This appeal stems from the dismissal by summary judgment of a public school teacher’s action against a school board for extended paid sick leave, as well as damages and medical expenses associated with the denial of additional leave. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
Edgar J. Saizan, Jr. (“Saizan”) was a tenured teacher employed by the Pointe Coupee Parish School Board (“School Board”).[1] During his employment with the School Board, Saizan accumulated sick leave pursuant to the provisions of LSA-R.S. 17:1201[2], which he utilized to receive his full rate of compensation after becoming ill during the 2002-2003 school year. On May 5, 2003, Saizan exhausted his accumulated sick leave, including his annual *561 ten-day allowance for that school year. Pursuant to the provisions of LSA-R.S. 17:1202[3], Saizan requested and the School Board granted, ninety additional days of extended sick leave, beginning on May 6, 2003, during | «which Saizan received sixty-five percent of his regular compensation. In November 2008, Saizan was informed that his extended sick leave would expire on December 12, 2003.
Claiming that he was suffering from a catastrophic and long-term illness, Saizan requested that the School Board grant him an additional period of extended paid sick leave. The School Board informed Saizan that its unwritten policy was to treat all sick leave, catastrophic and otherwise, the same. Therefore, the School Board denied Saizan’s request for additional extended paid sick leave and placed him on leave without pay, effective December 13, 2003 through the end of the 2003-2004 school year. The School Board formally adopted a written sick leave policy on December 18, 2003, reiterating and clarifying that sick leave for employees with catastrophic and long-term illnesses would be treated the same as sick leave for employees suffering from other illnesses. Saizan remained on leave without pay status until he retired on July 28, 2004.
Shortly after his retirement, Saizan filed this lawsuit against the School Board seeking to be placed on leave with pay, presumably for the time period that he had been denied additional extended paid sick leave through the date of his official retirement. Saizan complained in his petition that at the time that he was denied additional paid leave he was suffering Rfrom a catastrophic and long-term illness, and the School Board did not have a policy in effect addressing such illnesses as required by LSA-R.S. 17:1202 E(2)(d)(i). Saizan later supplemented his petition to further allege his entitlement to general damages for mental pain and suffering and loss of earnings, as well as special damages for all of his past and future- medical expenses.
The School Board answered Saizan’s allegations by general denial. On November 22, 2005, the School Board filed an initial motion for summary judgment, supported by numerous affidavits and exhibits. The School Board’s position was that Saizan had been placed on leave without pay only after he had exhausted all accumulated and extended sick leave to which he was entitled under law, citing LSA-R.S. 17:1201 and 17:1202. The School Board also argued that its existing policy on long-term and catastrophic illnesses was to treat such illnesses the same as any other illness for sick leave purposes. The School Board formally confirmed and ratified this policy in a written resolution at a meeting on December 18, 2003. Saizan opposed the School Board’s initial motion for summary judgment, primarily arguing that genuine issues of material fact and law *562 existed regarding whether he suffered from a catastrophic and long-term illness, and whether the School Board satisfied the mandates of LSA-R.S. 17:1202 regarding a specific sick leave policy for catastrophic and long-term illnesses.
After a hearing, the trial court denied the School Board’s initial motion for summary judgment, finding genuine issues of material fact surrounding the nature of Saizan’s illness and opining in dicta that the Legislature intended that school boards provide “unique and specific” | .¡policies regarding catastrophic and long-term illnesses rather than adopt identical policies for all types of illnesses.[4] The School Board applied for supervisory writs to this Court and the Louisiana Supreme Court, but both applications were summarily denied in unpublished writ actions.[5]
On June 30, 2009, the School Board filed a second motion for summary judgment, which is the subject of the instant appeal. In its second motion, the School Board sought dismissal of Saizan’s lawsuit because the facts material to the controlling and determinative legal issues were undisputed, including the nature of Saizan’s illness that the trial court specifically found was contested at the time of the initial motion for summary judgment.[6] Saizan opposed the second motion for summary judgment with the same argument that the School Board could not satisfy the statutory mandate by adopting a sick leave policy for catastrophic and long-term illnesses that simply restated the policy that was applicable to other illnesses. Essentially, the parties relied on the same evidence submitted in support and in opposition to the initial motion for summary judgment.
On September 15, 2009, the trial court issued a judgment granting the School Board’s second motion for summary judgment, and dismissing | (;Saizan’s case with prejudice. Saizan filed a timely motion for new trial based on the law of the case doctrine, citing the trial court’s denial of the School Board’s initial motion for summary judgment. After issuing written reasons, the trial court denied Saizan’s motion for new trial clarifying that the School Board was within the comports of LSA-R.S. 17:1202 E(2)(d)(i), and ruling that there was no prohibition against hearing a second motion for summary judgment on the same issue with a different result. Saizan filed this appeal, challenging the trial court’s grant of summary judgment in favor of the School Board, as well as the denial of his motion for new trial.
LAW AND ANALYSIS
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Bozarth v. State, LSU Medical Center/Chabert Medical Center, 09-1393 (La.App. 1 Cir. 2/12/10), 35 So.3d 316, 323. *563 The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B; Id.
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to |7establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2).
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Bozarth, 35 So.3d at 324. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id.
In the renewed motion for summary judgment, as in the original urging of the motion, the School Board “points out” that Saizan will be unable to meet his burden of establishing his right to additional extended paid sick leave pursuant to LSA-R.S. 17:1202 or otherwise. For purposes of the second motion for summary judgment, the School Board does not dispute any material facts regarding Saizan’s illness or the application of the School Board’s extended sick leave policy. The School Board maintains that Saizan contests only conclusions of law surrounding the interpretation of the applicable statutes and how those statutes apply to the undisputed facts. The School Board argues that such a challenge is insufficient to create a genuine issue that would defeat summary judgment.
Saizan argues that the School Board failed to meet its statutory obligation because it failed to adopt a separate policy for catastrophic and long-term illnesses until after he had requested additional extended paid sick leave. Because the facts remain the same as when the trial court denied the first motion for summary judgment, Saizan argues that the “law of the case” adoctrine or res judicata prevents a different conclusion on the School Board’s second motion for summary judgment.
We find no merit in Saizan’s assessment of the discretionary law of the case doctrine.[7] The denial of an initial motion for summary judgment does not bar a second motion for summary judgment. Bozarth, 35 So.3d at 323. The denial of a motion for summary judgment is an interlocutory judgment, which the trial court may change at any time up to final judgment. An interlocutory judgment cannot serve as the basis for a plea of res judicata. Id. Furthermore, the ju *564 risprudence specifically allows a trial 'court to consider a second motion for summary judgment after a first motion for summary judgment on the same issue has been denied. Id. Likewise, the denial of a writ application for supervisory review of an interlocutory judgment does not bar reconsideration of or a different conclusion on, the same question when an appeal is taken from a final judgment. Id.
Thus, our review of the merits of the summary judgment rendered against Saizan requires us to interpret the applicable statutory law to the undisputed facts. Saizan is incorrect in his assertion that the trial court’s prior resolution of this question be afforded great deference upon our review. Appellate review of questions of law is simply whether the lower court was legally correct. See Sanders v. Pilley, 96-0196 (La.App. 1 Cir. 11/8/96), 684 So.2d 460, 463, writ denied, 97-0352 (La.3/21/97), 691 So.2d 90. Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. After our 19review, we render judgment on the record, without deference to the legal conclusions of the lower court. Sabine Parish Police Jury v. Comm. of Alcohol & Tobacco Control, 04-1833 (La.4/12/05), 898 So.2d 1244, 1247.
In 1999, the Louisiana Legislature amended LSA-R.S. 17:1202 to replace the provisions for extended sick leave, requiring that teachers be permitted no more than ninety days extended sick leave each six-year period.[8] The amendment also set forth the rate at which teachers on such leave should be paid and the manner in which savings resulting from the change should be utilized.
Interpretation of any statute begins with the language of the statute itself. Richardson v. Lott, 03-0189 (La.App. 1 Cir. 11/7/03), 868 So.2d 64, 72, writ denied, 03-3324 (La.2/13/04), 867 So.2d 707. When the application of the clear and unambiguous language of the statute does not lead to absurd results, the law shall be applied as written, without further interpretation in search of legislative intent. Id. The pertinent part of LSA-R.S. 17:1202, as amended, provides:
A. (1) Every ... school board shall permit each teacher to take up to ninety days of extended sick leave in each six-year period ... for personal illness ... at any time that the teacher has no remaining regular sick leave balance.
[[Image here]]
E. ... (2)(d)(i) ... the board shall adopt a policy regarding providing for employees suffering from catastrophic and long-term illness.
(ii) The board may ... provide additional compensation or extended leave days in excess of what is required in this Section. (Emphasis added.)
| mOur careful examination of the clear and unambiguous language of the statute leads us to the conclusion that Sai-zan was not entitled to additional extended paid sick leave after he exhausted all of his paid sick leave to which he was entitled by law.[9] The statute requires a school board *565 to adopt a policy addressing sick leave issues for employees suffering from catastrophic and long-term illnesses, but the statute does not require a different leave policy for various types of illnesses. It is undisputed that the School Board in this case had an unwritten policy at the time of Saizan’s illness and application for additional extended sick leave that included all types of illnesses without distinction. It is also undisputed that the School Board formally adopted its policy clarifying that it considered catastrophic and long-term illnesses the same as all other illnesses for purposes of sick leave.
Our interpretation of the statutory requirements matches that of the trial court. Pursuant to the discretionary authority granted the School Board by the statute, the School Board lawfully denied Saizan additional paid sick leave beyond the ninety days of required extended leave. Although the School Board’s formal written adoption of its sick leave policy did not distinguish a different number of days of additional paid sick leave for catastrophic and long-term illnesses, it was not statutorily required to do so. The School Board’s policy was compliant with the law in that it did not exclude employees with such illnesses. Catastrophic and long-term illnesses were particularly identified in the School Board policy and were included Inwith all illnesses under the general sick leave policy. Thus, we find the School Board fully complied with the terms of LSA-R.S. 17:1202 when it denied Saizan’s application for additional extended paid sick leave. Therefore, the trial court correctly granted summary judgment in favor of the School Board. We likewise find no abuse of discretion or other error in the trial court’s denial of Saizan’s motion for new trial.[10]
CONCLUSION
We find that the trial court’s September 15, 2009, grant of summary judgment in favor of the Pointe Coupee Parish School Board was properly rendered, and Edgar J. Saizan, Jr.’s motion for new trial was properly denied. We affirm the trial court in all respects. All costs of this appeal are cast to the proper party plaintiff, Travis Saizan, the independent administrator for Edgar J. Saizan, Jr.’s succession.
AFFIRMED.

. On January 21, 2009, Travis Saizan, the independent administrator for Saizan’s succession, was substituted as party plaintiff for the now deceased Saizan. However, we will continue to refer to Saizan as the plaintiff in this proceeding.

. Louisiana Revised Statutes 17:1201 provides in pertinent part:
A. (1) Every member of the teaching staff employed by any parish ... school board of this state shall be entitled to and shall be allowed a minimum of ten days absence per school year because of personal illness ... without loss of pay. Any portion of such sick leave not used in any year shall be accumulated to the credit of the member of the teaching staff without limitation.
(2) ... The ... school boards may grant additional sick leave, without loss of pay, or with such reduction of pay as they may establish and fix.

. Louisiana Revised Statutes 17:1202 provides in pertinent part:
A. (1) Every parish ... school board shall permit each teacher to take up to ninety days of extended sick leave in each six-year period of employment which may be used for personal illness ... in the manner provided in this Subsection at any time that the teacher has no remaining regular sick leave balance.
C. ... (2) Any teacher on extended sick leave shall be paid sixty-five percent of the salary paid to him at the time the extended sick leave begins.
E. ... (2)(d)(i) In addition to the authority provided in R.S. 17:1201(A)(2), the [school] board shall adopt a policy regarding providing for employees suffering from catastrophic and long-term illness.
(ii) The [school] board may, as part of a collective bargaining agreement, or by its own policy provide additional compensation or extended leave days in excess of what is required in this Section.

. In its ruling denying a new trial, issued after the School Board filed and was granted a second motion for summary judgment and which is the subject of this appeal, the trial court indicated that its ruling on the Legislature’s intent behind LSA-R.S. 17:1202 E(2)(d)(i) in the School Board’s initial motion for summary judgment was “in the form of dicta.”

. Saizan v. Pointe Coupee Parish School Board, 2006-1383 (La.App. 1 Cir. 10/18/06)(unpublished); Saizan v. Pointe Coupee Parish School Board, 2006-2738, 948 So.2d 154 (La 1/12/07)(unpublished).

.Alternatively, the School Board argued that Saizan's damage claims for mental pain and suffering and/or medical expenses should be dismissed for lack of sufficient evidence to establish the elements required to recover damages; however this alternative argument is not at issue in this appeal.

. The law of the case principle is merely discretionary and will not be applied so as to prevent a higher court from examining the correctness of the ruling of a lower court. See Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 330-331, 256 So.2d 105, 107 (1971).

. 1999 La. Acts, No. 1341, § 1, effective August 15, 1999. Prior to the amendment, the law did not allow a school board the discretion to deny extended sick leave to a school teacher and discontinue payment of his salary if he had exhausted his accumulated sick leave. See Dagenhardt v. Terrebonne Parish School Bd., 94-1672 (La.2/20/95), 650 So.2d 1161, 1165. However, any prior jurisprudence inconsistent with the 1999 amendment to LSA-R.S. 17:1202 has obviously been legislatively overruled, and is inapplicable to this case.

. It is undisputed that Saizan exhausted his accumulated sick leave, including his ten-day allowance for the 2002-2003, plus an addi *565 tional ninety days of extended paid sick leave at sixty-five percent of his salary.

. A trial court’s discretion in deciding whether to grant a new trial is great and will not be disturbed on appeal absent an abuse of that discretion. McClary v. Schiro, 00-0305 (La.App. 1 Cir. 3/30/01), 801 So.2d 398, 403, writ denied, 01-2126 (La.1 1/2/01), 800 So.2d 878.