11 WICKER, Judge.
This is a suit by a shareholder in a close corporation for injunction and declaratory judgment against another shareholder. The plaintiff appeals a judgment dismissing his suit. We affirm the denial of the’preliminary injunction but vacate the dismissal and remand for further proceedings.
John S. Neumeyer, plaintiff, seeks to asserts claims individually and on behalf of Network 1000, Inc., a corporation in which he is a shareholder. He filed suit individually, as a shareholder of Network 1000, and as president of the corporation, seeking an injunction and declaratory judgment against Madeline Schwartz, individually and in her capacity as president of Merj, Inc. Merj also was named a defendant. Schwartz claims to be the majority shareholder of Network 1000, but Neumeyer claims that Schwartz obtained her stock fraudulently and that she is illegally refusing to turn over the Neumeyer the corporate records, as well as refusing to allow him admittance to Network 1000’s major corporate asset, a restaurant complex over which Network 1000 holds a lease. (Merj subleased a portion of the property from Network 1000.)
Schwartz filed an exception of lack of procedural capacity, asserting that Neumeyer cannot sue as an individual for damages to a corporation. Further, she asserted he cannot sue as president of Network 1000 because he is not a duly-elected officer or director of the corporation and there is no board resolution authorizing him to act on behalf of the corporation. Alternatively, Schwartz opposed the application for injunction on the basis that there is no irreparable harm and all the claims made are answerable in damages.
The case was set for early hearing on the exception of lack of procedural capacity and the application for preliminary injunction. At the hearing on May 28,1997 evidence was presented both |2on Neumeyer’s procedural capacity and on the validity of the stock sales to Schwartz. At issue were whether Neu-meyer had authority to proceed on behalf of the corporation, either as president of the company or as an authorized agent to sue on the company’s behalf. Also at issue were the transfers of stock by Bass and Smith to Schwartz.
The trial court ruled from the bench that the preliminary injunction would be denied and the exception of lack of procedural capacity would be granted. No written judgment was rendered until June 9, 1997, however, when the trial court rendered judgment in favor of Schwartz and against Neumeyer. The judgment decreed that Schwartz’s purchase of stock in Network 1000 Ltd. was in compliance with the corporation’s restrictions on sale of stock and that all sales of stock are valid. Without mentioning the court’s prior oral ruling regarding Neumeyer’s lack of procedural capacity, the judgment dismissed the plaintiffs suit on the merits.
On appeal plaintiff asserts the trial court erred in the following respects: making a final ruling regarding the validity of stock sales at a hearing on a preliminary injunction; finding that John S. Neumeyer was not the sole remaining member of the Board of Directors and was not authorized to bring this lawsuit; finding that there was sufficient evidence to find that the stock sales in dispute were valid; finding that defendant-ap-pellee Madeline Schwartz was the president of the corporation; and failing to order the disclosure of the complete document showing the agreement of sale of stock from Ray Baas to Madeline Schwartz.
In response the defendants-appellees argue that the trial court properly allowed all issues to be tried together because the par *1260 ties consented to it; the trial court did not abuse its discretion in finding that the stock purchase by- defendant-appellee complied with all corporate requirements; the trial court correctly ruled that John S. Neumeyer was not authorized to bring this lawsuit; that it is irrelevant whether or not the trial court ruled that Madeline Schwartz was the duly-elected president; and that the court properly refused to order production of documents unrelated to the lawsuit. Defendants contend the judgment must be affirmed because plaintiff failed to produce any documentary evidence to show he was authorized to bring the lawsuit and the testimony of Roy Baas, acting secretary for the corporation, was that the stock was properly offered for sale to the corporation prior to being sold to.Schwartz.
I «EVIDENCE
The first witness was Ray Baas, who testified that the incorporators of Network 1000 were himself, John Neumeyer and Emmett T. Smith. Baas drafted the articles of incorporation. There were five shareholders: John Neumeyer, 275,000 shares; Ray Baas, 275,000 shares; E.T. Smith, 50,000 shares; Madeline Schwartz, 5,000 shares; and Robert Levine, 5,000 shares. Baas stated the initial report filed with the secretary of state listed Smith and Baas as directors of the corporation. (Although plaintiff introduced a copy of the articles of incorporation into evidence, neither side offered a copy of the initial report.) As far as Baas could recall, no annual statements were ever filed thereafter.
Baas also said that no official board meetings were ever called or held. A majority of the ownership interests convened to issue a corporate resolution to open the bank account and also convened to designate an agent to sign on the leases executed by the corporation. (E.T. Smith was designated as agent to sign on the master lease; Baas signed on the sublease subletting the property to Merj, Inc.) He stated that he listed himself on various documents as acting secretary and maintained the corporate records until he sold his stock to Schwartz, at which time he gave Schwartz the corporate records.
Baas testified further there were no formal minutes of any of these meetings, but said he took copious notes and kept them with the corporate records. He reiterated there were never any official stockholder meetings or board meetings.
Baas subsequently sold his stock to Schwartz, but first he wrote a letter to the corporation making an offer of the stock to the corporation. He also wrote a letter to Neumeyer and Schwartz advising them his stock was for sale. When Smith inquired about selling his stock, Baas told him he had to write a letter to the corporation advising that his stock was for sale and Smith did so. Baas said Neumeyer was aware of the sales.
On cross examination, Baas acknowledged that Neumeyer signed himself as president on the resolution authorizing opening of the bank account. Baas stated, “It was always the intention that he would eventually be elected as president of the corporation, an event which, unfortunately, never took place.”
Madeline Schwartz testified she has been a stockholder of Network 1000 since the end of 1995, but she never received any notice of a shareholders’ meeting for the purpose of electing a board pof directors. Baas turned ovér the corporate records to her after she purchased his stock, but she found no minutes of meetings in those records, nor any record of election of officers.
Schwartz testified further that, after acquiring the majority share of the stock, she called a stockholders’ meeting after Neumeyer filed this lawsuit. The meeting was held on April 29, 1997 and a board was elected, with Schwartz as the president of the corporation. All stockholders were present at that meeting, including Neumeyer. She had purchased stock from Smith to give'her leverage. Neumeyer advised her to do so, in order to give her and Neumeyer voting control over Baas. When Baas’ stock came up for sale she discussed it with Neumeyer many times.
The document incorporating the sale between her and Baas also contained a proxy authorizing her to vote all his shares. Thus, she said, even if the sale of his stock to her *1261 was invalid, it was legal for her to vote Baas’ shares. The corporate books contain a complete copy of the sale document, but she never provided Neumeyer with a copy because the document included a confidentiality clause. (The transfer of the shares was part of a compromise of litigation between Baas and Schwartz not related to this case.)
Schwartz denied that the sale of stock by E.T. Smith to her took place less than 30 days after the stock was offered to the corporation. She recalled they were supposed to sign the papers one day, but had to wait because the 30-day period had not passed. Smith said they had to wait a couple of days longer to be in compliance. They waited a few days longer, then returned to the attorney’s office to sign the papers. She said the document was signed on the day it was supposed to be signed to comply with the stock being offered back to the corporation.
She also testified she received copies of letters from Smith and Baas offering to sell their stock to the corporation. Smith’s letter was dated December 11, 1996; Baas’ letter was dated December 20, 1996. The letter was sent to her and to Neumeyer. She said she and Neumeyer “discussed it many times,” so she was sure he had received his copies.
She acknowledged receiving two letters from Neumeyer prior to his instituting this suit, inviting her to a “board meeting.” She was not a member of the board at that time, so she did not attend.
E.T. Smith testified that he, Neumeyer and Baas were actively involved in the corporation and they met every day. He said Neumeyer was “always” the president of the corporation, Ray Baas was the secretary, and he himself was vice president and chairman of the board. It was something they Rail three agreed on and they always acted in that capacity. Baas took minutes at their meetings and Smith always assumed the minutes were being entered in the corporate records. Smith also stated that in January 1996 he agreed with Baas and Neumeyer to remove himself from management and control and left Baas and Neumeyer on the board to conduct the affairs of the business.
Smith testified that Ray Baas approached him about selling his stock. When Smith expressed interest in the offer, Baas informed him he had to notify the corporation 30 days in advance. Smith stated Baas suggested appropriate wording for the notice and typed the letter for him. It was dated December 11, 1996 and Smith was sure it went out that day. Smith said further that he “made it known” to Schwartz and Neu-meyer that Baas wanted to purchase his stock.
Smith sent the letter to the corporation, but never sent a separate letter to Neumeyer. (He testified, that was Baas’ duty as secretary of the corporation.) Schwartz subsequently offered to purchase the stock. Smith and Schwartz executed the sale document on January 9th, although the document was dated January 13 th. Smith admitted they postdated it “in order to have clearance for that thirty days notice to the company.” However, they signed the agreement on January 9th and he received the money for the stock on January 10 th. Schwartz paid him $2,500 for his shares.
Smith also admitted that Neumeyer was not listed on any of the incorporation documents as a director, but said, “It was always understood that he was the director.”
John Neumeyer testified he was the president of the company from the very beginning because he was the only one of the incorpo-rators with the necessary expertise in restaurant design and development. He denied he was ever given written notice of Smith’s offering his stock to the corporation. He did not know an actual sale had taken place until April 1997.
PROCEDURAL CAPACITY
Early in the hearing defense counsel objected to testimony being elicited by plaintiff’s counsel, on the ground that it was irrelevant to the exception of lack of procedural capacity. After some discussion the trial *1262 court implicitly overruled the objection, allowing the line of questioning to continue because the court felt it was relevant to the preliminary injunction.
In ruling from the bench the court stated,
[A]s far as the Exception of Lack of Procedural Capacity, I agree that Mr. Neumeyer, off the bat, has no personal procedural capacity to be suing, to bring this type of suit. He has a stockholder’s derivative suit if he’s suing just as a stockholder. So that part, him individually, he just doesn’t have procedural capacity to be here.
| fiThe question is whether or not he has capacity to represent Network 1000, Limited. * * *
However, based on the evidence I’ve seen, I have not seen anything that will show that the Articles of Incorporation were not followed in that the thirty-day notice was given to the corporation. * * *
I think, based on the way it was operated, that Mr. Neumeyer probably was the de facto president of the corporation. Whether de jure, juris, I don’t know, but the way it was operated was not following all of the rules, but he was operating as president.
But I find nobody introduced any bit of evidence of a stockholders’ meeting or a board of directors’ resolution of anyone purporting to be all of the stockholders or all of the board of directors which authorized him to enter into this lawsuit on behalf of the corporation.... I’ve checked all of the exhibits, so it appears to be maybe even an unauthorized lawsuit. I think that now, I mean, we’ve had enough evidence here to declare the stock, the majority of the stock, is owned by Ms. Schwartz.... I think it’s legal, a legal transfer. I don’t see anything about defraud [sic]. * * *
So, consequently, and I don’t find that there’s any need for injunctive relief. The president of the corporation, the way I understand the law, is Ms. Schwartz, who does not authorized [sic] this lawsuit. Consequently, I’m going to dismiss this lawsuit.
As noted above, however, when the written judgment was rendered the suit was dismissed not for lack of procedural capacity, but based on a finding of validity of the stock transfers. In effect, the court bypassed the issue of procedural capacity to address the merits of the suit. Had the exception been properly granted, the case should have proceeded no further, since the court found the plaintiff had no capacity to sue either as an individual or on behalf of the corporation.
Oral reasons for judgment do not constitute a judgment:
When the oral reasons or minute entry conflicts with the written judgment, the latter governs. * * * The trial judge may, within his authority, render judgment which differs substantially from his prior oral statements. Such oral reasoning forms no part of the judgment. * * * It is the formal, signed judgment which governs the controversy.
Marino v. Marino, 576 So.2d 1196, 1198 (La.App. 5 Cir.1991). See La.Code Civ. P. Arts. 1911, 1918.
The written judgment as rendered governs the issues on appeal. Accordingly, in failing to mention the exception of lack of procedural capacity and ruling on the merits, the trial court implicitly denied the exception. The defendants, however, have not appealed the court’s failure to address 7plaintiffs procedural capacity. They must be deemed to have waived the exception, therefore, and we will not rule on the issue of procedural capacity.
DENIAL OF PRELIMINARY INJUNCTION
During the course of the hearing defense counsel objected several times to the scope of the evidence being elicited by plaintiff’s counsel, on the basis the questions went beyond the purposes of procedural capacity *1263 and/or preliminary injunction and were directed to the merits of plaintiffs request for a declaratory judgment as to ownership of the stock. The trial court overruled the objections.
On appeal now, it is plaintiff who objects to the trial court’s ruling on the issue of stock ownership. We find no merit to his objections, because plaintiffs counsel opened that area at the hearing. His examinations of Baas, Schwartz and Smith were directed to disproving the validity of the transfers and he thereby expanded the scope of the hearing. Accordingly, he cannot now complain because the trial court ruled against him on an issue which he introduced.
We find no manifest error in the court’s finding that the transfers of stock were valid. Baas and Schwartz testified that the corporation was properly notified in writing 30 days in advance. Smith testified that his transaction took place before the 30-day period had ended, which contradicted Schwartz’s testimony. The trial judge plainly stated he did not find Smith credible.
On appellate review, the trial court’s reasonable factual findings, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). Where there are two permissible views of evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). A credibility determination is within the sound discretion of the trial court and may not be reversed absent a showing the court was clearly wrong. There is no such showing here. Accordingly, we find no basis on which to disturb the court’s conclusion that the sales were valid.
However, a hearing on a preliminary injunction is directed to showing that plaintiff otherwise will suffer irreparable injury, loss or damage. A party is only entitled to injunctive relief if the facts supporting the request for preliminary injunction present a prima facie case justifying its issuance. Huber Oil Co. of Louisiana, Inc. v. Save-Time, 422 So.2d 597, 600 (La.App. 3 Cir.1982). Plaintiff failed to present prima facie proof that he is either the president or duly-appointed agent of the ^corporation or that he owns the controlling interest in the corporation. Accordingly, the trial court did not err in refusing to issue a preliminary injunction.
DISMISSAL OF SUIT
Neumeyer sought to invalidate Schwartz’s purchase of stock in Network 1000, Ltd. and to force Schwartz to transfer to him the corporate papers and keys. The court, however, found Schwartz’s purchase of the controlling ownership interests in the corporation valid. That finding made the goal of Neumeyer’s suit futile. Accordingly, it would appear there was no reason to hold the case open for a hearing on a permanent injunction.
However, a preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial of the issues on the merits of the case. La.Code Civ. P. art. 3601; Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979). “[T]he principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit-issues.” Id. The exception is that where the parties expressly agree to submit the case for final decision at the hearing on the rule for a preliminary injunction, the ruling on the preliminary injunction may definitively dispose of the merit issues. Id., note 9.
This was a hearing on a preliminary injunction, but the parties did not expressly agree to submit the ease for final decision at this hearing. Therefore, the trial court erred in dismissing the suit. The matter must be remanded for hearing on the merits of the permanent injunction, regardless of how un *1264 likely such relief may appear from the record before us. See Equitable Petroleum Corp. v. Central Transmission, Inc., 431 So.2d 1084, 1087 (La.App. 2 Cir.1983).
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it denied the preliminary injunction based on the validity of the stock sales; it is vacated insofar as it dismissed plaintiffs suit; and the matter is remanded for further proceedings. The parties are cast with their own costs for this appeal.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.