*319 GUIDRY, J.
12This appeal stems from the dismissal of a medical malpractice action by summary judgment. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 17, 1999, Joanna Bozarth, Phyllis Garcia, Cynthia Berges, Stephanie Rosales, Mary Owen and Rachel Curtis, the wife and daughters of James Philmore Bozarth (collectively “plaintiffs”), filed a petition for damages against the State of Louisiana through the Louisiana State University, Health Care Services Division, Leonard J. Chabert Regional Medical Center, and several doctors employed by the medical center, alleging that Mr. Bozarth died as a result of the named defendants’ failure to properly diagnose and treat Mr. Bozarth and for negligently prescribing medications and discharging Mr. Bozarth under the circumstances. The named defendants filed a dilatory exception raising the objection of prematurity in response to the plaintiffs’ petition, asserting that the petition raised claims of medical malpractice, and as state healthcare providers, the claims had to first be presented to a Medical Review Panel, as required by La. R.S. 40:1299.39, before suit could be instituted. The trial judge sustained the exception, and the plaintiffs’ petition was dismissed without prejudice.
A Medical Review Panel was convened that determined that only the “State of Louisiana, LSU Medical Center, Health Care Services Division” and two of the named physicians, Dr. Jonah Ezieme and Dr. Joe Johnson (hereinafter collectively “LSUMC”), failed to meet the applicable standard of care as charged in the plaintiffs’ petition; however, the Medical Review Panel further determined that “[t]he conduct complained of was not a factor of the resultant damages” claimed by plaintiffs. Following issuance of the Medical Review Panel’s opinion, plaintiffs re-filed their petition for damages on December 2, 2000, and LSUMC filed an answer generally denying liability for plaintiffs’ claims.
| .^Following a period of discovery, LSUMC filed a motion for summary judgment asserting that the plaintiffs would not be able to meet their burden to prove that the established breach of the standard of care caused the damages claimed by the plaintiffs, namely the death of Mr. Bo-zarth. On July 26, 2005, the trial judge granted the motion in part to dismiss the plaintiffs’ claims against the “Chabert Medical Center” and all of the named physician defendants except Drs. Johnson and Ezieme. The trial judge denied the motion for summary judgment as to LSUMC.[1] LSUMC applied for writs to this court and the Louisiana Supreme Court, but writs were denied by both courts.
Approximately a year and a half following the Louisiana Supreme Court’s denial of writs, plaintiffs filed a motion to reset the matter for trial. LSUMC, in turn, filed a motion in limine seeking to exclude the live or affidavit testimony of Cheryl Crochet. In the same pleading, LSUMC also requested that the previously-filed motion for summary judgment be renewed *320 in the event the motion in limine was granted. A hearing on the motion in li-mine and renewed motion for summary judgment was initially set for September 15, 2008, but because the court was closed until that date due to Hurricane Gustav, the matter was continued and a subsequent date set for the hearing was also continued at the request of the parties.
On November 14, 2008, LSUMC filed a motion to reset the motions for a contradictory hearing, and on November 19, 2008, the trial judge signed an order setting the matter for January 16, 2009, at 9:00 a.m. The order included instructions to serve counsel for the plaintiffs with the order.
|4On January 16, 2009, counsel for the plaintiffs did not appear at the hearing, and the trial judge noted that plaintiffs’ counsel had been personally served with notice of the hearing on December 10, 2008. The trial judge then proceeded to consider the evidence and arguments presented by LSUMC in favor of the motions filed. By a judgment signed January 30, 2009, the trial judge rendered judgment granting the motions and dismissed the plaintiffs’ claims against LSUMC. It is from this judgment that the plaintiffs appeal.
ASSIGNMENTS OF ERROR
On appeal, plaintiffs specify the following actions by the trial court as error:
1) Under the circumstances exigent on January 16, 2009, [the trial judge] erred in going forward with the summary judgment hearing.
2) Under the circumstances exigent on January 16, 2009, [the trial judge] erred in allowing any testimony at all, much less that of Dr. Mary Eschete[,] a former defendant herself in the matter and [the trial judge’s] admitted childhood friend who he qualified as an expert and whose testimony was filled with hearsay that went to the merits of the claim far outside the scope of a summary judgment.
3) Under the circumstances exigent on January 16, 2009, [the trial judge] erred in even entertaining [the] second motion for summary judgment as [the trial judge’s] decision of July 25, 2005 denying this exact same motion, which was affirmed by the denial of writs from that decision to [the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court], was res judicata.
4) Under the circumstances exigent on January 16, 2009, [the trial judge] erred in granting summary judgment.
DISCUSSION
Plaintiffs’ first challenge to the summary judgment is the assertion that the trial judge erred in holding the hearing without the attendance of counsel for the plaintiffs. In their brief, counsel for the plaintiffs asserts that on the date of the hearing, the trial judge’s clerk contacted counsel’s office to inquire if he would be appearing for the hearing. Counsel was meeting with a client from California at the time, and on reviewing his calendar, realized he had scheduled the hearing for the wrong date. Counsel then asked to speak with the trial judge and was allegedly Ifitold that the judge was unavailable, but would call counsel back. When counsel did not hear from the judge, he called the court and allegedly was told the judge was on the bench, and on calling a second time, counsel was told that the judge had ruled on the motions and left for the day. Plaintiffs assert that the trial judge unfairly prejudiced them by going forward with the hearing.
We construe plaintiffs’ account of their counsel’s attempt to contact the trial judge *321 as indicating that an attempt was made to have the hearing on the motions continued, although a continuance was not expressly requested. See Perkins v. Willie, 01-0821, p. 2 (La.App. 1st Cir.2/27/02), 818 So.2d 167, 169. Since none of the peremptory grounds for granting a continuance listed under La. C.C.P. art. 1602[2] exists, we must consider whether the trial judge abused the discretion granted him under La. C.C.P. art. 1601 in not finding that good grounds existed for continuing the hearing.
At the hearing on the motion in limine and the renewed motion for summary judgment, the following colloquy occurred regarding proceeding with the hearing in the absence of plaintiffs’ counsel:
MS. WHEELER:
Your Honor, Ms. Bergeron did get in touch with [counsel for the plaintiffs] and he was under the impression that the hearing in this matter was set for the 21st.
I don’t know whether the docket reflects that he was served notice of today’s hearing date; but this is the second or third continuance of this case.
I have Dr. Eschete here, away from the hospital, to put on evidence. Even if he thought that the hearing was set for the 21st, I don’t believe that I’ve received an opposition to the motion for summary judgment [that] was filed at least eight days prior to the hearing date.
The only concern I would have is whether he got legitimate notice of today’s hearing.
LTHE COURT:
December 10th, 2008, correct? That’s the service, huh, for today, January 16th.
MINUTE CLERK:
Uh-huh.
THE COURT:
Let’s proceed. I mean, this case has gone on long — This ease is from what, 1999? It’s time to finish it up.
[[Image here]]
THE COURT:
And let’s just show: This is Docket No. 124974. The record reflects that the plaintiff was served with notice of reassignment of this motion for limine and motion for summary judgment. And he was served December 10th. No opposition has been filed by the plaintiffs attorney. The Court will proceed with the hearing.
A trial court’s ruling regarding a continuance will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. Appellate courts interfere in matters such as control of a trial court’s docket, case management, and determining whether a motion for continuance should be granted only with reluctance and in extreme cases. Perkins, 01-0821 at 2-3, 818 So.2d at 169.
In Porter v. Fulton, 99-1361 (La.App. 5th Cir.6/27/00), 762 So.2d 1272, none of the parties appeared at the hearing on the motion for summary judgment because of a mistaken belief that a motion for continuance filed by the defendants, who were also the movants for summary judgment, had been granted. When the trial court contacted plaintiffs counsel regarding the status of the case on the date of the hear *322 ing, plaintiffs counsel informed the trial court of his belief that the matter had been continued. Despite being informed of the misunderstanding, the trial court ruled on the motion based solely on the memorandum filed by the defendants. On appeal, the court considered the fact that no opposition to the motion had been filed by the plaintiffs and found “[t]he trial court had whatever |7material the litigants had chosen to file in order to decide the matter.” Thus, the appellate court concluded that the trial court did not err in deciding the motion in the absence of counsel for the parties. Porter, 99-1351 at 3-5, 762 So.2d at 1273-74
Similarly, while the trial judge’s staff in the matter before us was allegedly made aware of counsel’s misunderstanding regarding the date for which the hearing was scheduled, given the fact that counsel was properly notified of the correct date for the hearing and further observing that nothing had been submitted in opposition to the motion in limine combined with the renewed motion for summary judgment,[3] we cannot say that the trial judge abused his discretion by proceeding with the hearing on the motions. Accordingly, we reject plaintiffs’ first specification of error.
In their second specification of error, plaintiffs allege that the trial judge should not have allowed Dr. Mary Eschete to testify at the hearing because she had previously been named a defendant in the case and because she was personally acquainted with the judge. We find no merit in this allegation. Neither bias nor the fact that a witness is a party or an employee of a party precludes a witness from being qualified as an expert.[4] Pelts & Skins Export, Ltd. v. State ex rel. Department of Wildlife and Fisheries, 97-2300, p. 4 (La.App. 1st Cir.4/1/99), 735 So.2d 116, 122, writs denied, 99-2036, 99-2042 (La.10/29/99), 748 So.2d 1167, 1168. Moreover, La. R.S. 9:2794(D)(5) provides that a physician shall not be prohibited from qualifying as an expert solely because he is a defendant in a medical malpractice claim.
Dr. Eschete was originally named as a defendant in this case, but was dismissed as a party pursuant to the partial summary judgment rendered by the trial judge on July 26, 2005. In conjunction with the hearing on the motion in limine and the renewed motion for summary judgment, Dr. Eschete was accepted as an expert in the field of internal medicine and infectious disease. Chapter 7 of the Louisiana Code of Evidence outlines the parameters of an expert’s testimony and expressly provides that an expert may testify in the form of an opinion or otherwise, that the expert’s opinion may be based on facts or data perceived by or made known to the *323 expert at or before the hearing and such facts or data need not be admissible in evidence, and that an expert’s opinion may even embrace the ultimate issue to be decided by the trier of fact in a civil case. See La. C.E. arts. 702-704. We observe that none of the grounds listed in chapter 6 of the Louisiana Code of Evidence for disqualifying or deeming Dr. Eschete incompetent to testify exist. See La. C.E. arts. 601, 602, 605 and 606. Hence, we find no error in the acceptance of Dr. Eschete as an expert witness and the admission of her testimony.
There is also no merit in plaintiffs’ third assignment of error. The denial of an initial motion for summary judgment does not bar a second summary judgment motion under the doctrine of res judicata. Simpson v. Davidson, 35,048, p. 4 (La.App.2d Cir.10/31/01), 799 So.2d 652, 655.[5] The denial of a motion for summary judgment is an interlocutory judgment, which the trial court may change at any | fltime up to final judgment. Berry v. Paul Revere Life Insurance Company, 08-0945, p. 2 n. 1 (La.App. 1st Cir.7/9/09), 21 So.3d 385, 386 n. 1, writs denied, 09-2220, 09-2241 (La.12/18/09), 23 So.3d 942, 945. An interlocutory judgment cannot serve as the basis for a plea of res judicata. Spiers v. Roye, 04-2189, p. 14 n. 9 (La.App. 1st Cir.5/19/06), 927 So.2d 1158, 1170 n. 9 (per curiam; on rehearing). Furthermore, the jurisprudence of this and other circuits specifically allows a trial court to consider a second motion for summary judgment after a first motion for summary judgment on the same issue has been denied. See Melton v. Miley, 98-1437, p. 4 (La.App. 1st Cir.9/24/99), 754 So.2d 1088, 1090, writ denied, 99-3089 (La.1/7/00), 752 So.2d 867; Hargett v. Progressive Insurance Company, 08-0293, pp. 6-7 (La.App. 4th Cir.10/29/08), 996 So.2d 1199, 1202; and the eases cited therein. Likewise, the denial of a writ application for supervisory review of an interlocutory judgment does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. McIntyre v. St. Tammany Parish Sheriff, 02-0700, p. 6 (La.App. 1st Cir.3/28/03), 844 So.2d 304, 308.
Thus, having found no merit in the plaintiffs’ first three specifications of error, we are left to consider the plaintiffs’ final specification of error regarding the merits of the summary judgment rendered.
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230-231.
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on *324 the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Charlet v. Legislature of the State of Louisiana, 97-0212, p. 7 (La.App. 1st Cir.6/29/98), 713 So.2d 1199, 1203, writs denied, 98-2023, 98-2026 (La.11/13/98), 730 So.2d 934.
In order to prevail in a medical malpractice action, a plaintiff is required to establish: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and the |n alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. See La. R.S. 9:2794 A; Lieux, 06-0382 at 10-11, 951 So.2d at 314. In other words, the plaintiff must establish the standard of care applicable to the doctor, a breach of that standard of care, and that the substandard care caused an injury the plaintiff would otherwise not have suffered. Lieux, 06-0382 at 11, 951 So.2d at 314.
The physician’s conduct is always evaluated in terms of reasonableness under the circumstances existing when his professional judgment was exercised. The physician will not be held to a standard of perfection nor evaluated with the benefit of hindsight. Lefort v. Venable, 95-2345, p. 4 (La.App. 1st Cir.6/28/96), 676 So.2d 218, 220. In medical malpractice actions, opinions from medical experts are necessary to determine both the applicable standard of care and whether that standard was breached. Lefort, 95-2345 at 4, 676 So.2d at 220.
In the matter before us, the trial judge granted both the motion in limine and the renewed motion for summary judgment filed by LSUMC. On appeal, plaintiffs do not contest the granting of the motion in limine. Accordingly, we will not consider the propriety of that ruling, which has been neither argued nor briefed. See URCA, Rule 2-12.4; McGaskey v. National Automotive Insurance Company, 08-511, p. 10 (La.App. 3d Cir.11/26/08), 998 So.2d 788, 794, writ denied, 09-0459 (La.4/13/09), 5 So.3d 171; Neumeyer v. Schwartz, 97-995, pp. 6-7 (La.App. 5th *325 Cir.3/25/98), 708 So.2d 1258, 1262. However, as the granting of the |12motion in limine has the effect of excluding Nurse Crochet as a witness, her testimony regarding causation cannot be considered for purposes of defeating LSUMC’s renewed motion for summary judgment.
In the renewed motion for summary judgment, as in the original urging of the motion, LSUMC “points out” that the plaintiffs will be unable to meet their burden of presenting expert medical testimony to establish that LSUMC’s breach of the applicable standard of care caused the damages claimed by the plaintiffs. In support of the motion, LSUMC presented the opinion of the Medical Review Panel, which found that LSUMC’s conduct “was not a factor of the resultant damages” despite finding that LSUMC breached the applicable standard of care. LSUMC also presented the testimony of Dr. Eschete, who also opined that the conduct of LSUMC did not cause the damages claimed by the plaintiffs, and, contrary to the Medical Review Panel, opined that LSUMC’s conduct did not breach the applicable standard of care.
An expert witness is generally necessary as a matter of law to meet the burden of proof on a medical malpractice claim. Lieux, 06-0382 at 11, 951 So.2d at 314-315. Although causation is not explicitly included among those elements listed in La. R.S. 9:2794 for which proof must be made through expert medical testimony, typically expert testimony is required to prove causation when the resolution of that issue is not a matter of common knowledge. Tillman v. Eldridge, 44,460, p. 12 (La.App.2d Cir.7/15/09), 17 So.3d 69, 77. Expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. There are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can. Pfiffner v. Correa, 94-0924, p. 9 (La.10/17/94), 643 So.2d 1228, 1234. However, as resolution of the issue of causation in this matter requires knowledge of the properties of the anti-tuberculin medications, especially regarding the physical affects of the medications, and the appropriate response of a physician presented with a patient with Mr. Bozarth’s symptoms, we conclude that the trial judge was correct in finding that expert medical testimony is needed to decide the issue of causation. See Guillory v. Dr. X, 96-85, p. 8 (La.App.3d 8/28/96), 679 So.2d 1004, 1009. The need for expert medical testimony is further indicated in this matter in light of the expert medical evidence presented by LSUMC to show that the breach of the standard of care did not cause any damage or injury to Mr. Bozarth. See Lieux, 06-0382 at 11, 951 So.2d at 315 (noting that the “requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence .... ”); see also Guillory, 96-85 at 8-9, 679 So.2d at 1009. Accordingly, we find no error in the summary judgment rendered by the trial judge.
CONCLUSION
For the foregoing reasons, we find the January 30, 2009 judgment was properly rendered and thus affirm. All costs of this appeal are cast to the plaintiffs, Joanna Bozarth, Phyllis Garcia, Cynthia Berges, Stephanie Rosales, Mary Owen and Rachel Curtis.
AFFIRMED.
PETTIGREW, J., concurs and assigns Reasons.

. The trial judge’s identification of the medical center as two separate entities, the "State of Louisiana, LSU Medical Center, Health Care Services Division” and the "Leonard J. Chabert Medical Center,” simply mirrored how the Medical Review Panel had identified the medical center in its opinion; however, based on the pleadings filed on behalf of the medical center, we recognize that the medical center is just one entity and that it remained a party to the action following the trial court’s July 26, 2005 ruling granting summary judgment in part.

. Louisiana Code of Civil Procedure article 1602 provides that “[a] continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.”

. Presumably, plaintiffs relied on the opposition filed in conjunction with the original motion for summary judgment to oppose the renewed motion.

. According to La. C.E. art. 607, the proper manner by which to attack the credibility of a witness who is alleged to be biased is by examining the witness on that point. See also Pelts & Skins Export, Ltd.., 97-2300 at 4, 735 So.2d at 122. Evidence of bias then goes to the weight, rather than the admissibility of the evidence. Gunn v. Robertson, 01-347, p. 17 (La.App. 5th Cir. 11/14/01), 801 So.2d 555, 566, writs denied, 02-0170, 02-0176 (La.3/22/02), 811 So.2d 942. The weighing of such evidence would have been done by the trial judge whom the plaintiffs assert was prejudiced by his longstanding friendship with the witness, but the plaintiffs did not seek to recuse the judge or assert that he should have recused himself from the case. In any event, it is observed that the mere fact of an association between the judge and a witness, alone, is insufficient to justify recusation of a judge. See Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc., 07-1801, pp. 9-10 (La.App. 1st Cir.8/29/08), 998 So.2d 107, 114-115, writs denied, 09-0011, 09-0024 (La.3/13/09), 5 So.3d 119, 120.

. In oral reasons for judgment, the trial judge indicated that he was partially denying the motion for summary judgment as it related to LSUMC to allow the plaintiffs’ an opportunity to establish Nurse Crochet's qualifications to testify regarding how the tuberculin medications administered to Mr. Bozarth affected him.