# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-85

TINA FONTENOT, ET AL.

VERSUS

GOLDEN AGE OF WELSH, LLC

************

## APPEAL FROM THE
## THIRTY-FIRST JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON DAVIS, DOCKET NO. C-757-18
## HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

************

## SYLVIA R. COOKS
## CHIEF JUDGE
************

Court composed of Sylvia R. Cooks, Chief Judge, Elizabeth A. Pickett, John E. Conery, D. Kent Savoie, and Charlie G. Fitzgerald, Judges.

**REVERSED.**

**Damon L. Beard**
**Todd A. Townsley**
**Jordyn A. Goody**
**The Townsley Law Firm, LLP**
**3102 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 478-1400**
**ATTORNEYS FOR APPELLANTS/PLAINTIFFS:**
  Tina Fontenot, individually and on behalf of Louis C. Fontenot, Sr.
  Stephen Fontenot, individually and on behalf of Louis C. Fontenot, Sr.
  Laurice Fontenot, individually and on behalf of Louis C. Fontenot, Sr.

**Brent N. Carriere**
**Allen & Gooch**
**P.O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**ATTORNEY FOR APPELLEE/DEFENDANT:**
  Golden Age of Welsh, LLC

**COOKS, Chief Judge.**

Louis C. Fontenot, Sr. passed away on January 16, 2015, while under the care of Post Acute Medical Center. Prior to being admitted to that facility Mr. Fontenot was cared for at Golden Age of Welsh, LLC (Golden Age of Welsh) from August 21, 2014, to November 2, 2014. Following Mr. Fontenot's death, his children, Tina Fontenot, Stephen Fontenot, and Laurice Fontenot (collectively referred to herein as Plaintiffs) filed a complaint with the Louisiana State Department of Health and Hospitals (DHH) against Golden Age of Welsh for its failure to properly care for Mr. Fontenot. After completing its investigation, the record indicates DHH issued a report finding that Golden Age of Welsh failed to notify physician of change in resident's condition; failed to provide care in accordance with acceptable standards of professional practice; failed to provide care in accordance with the plan of care; failed to prevent pressure ulcers; failed to provide the required Tracheotomy and Ventilator care; and failed to maintain accurate and complete medical records.

Plaintiffs thereafter filed a complaint with the Louisiana Patient Compensation Fund on July 30. 2015. On August 27, 2018, the Medical Review Panel (Panel) rendered a unanimous opinion finding that Golden Age of Welsh breached the standard of care in multiple ways but also concluded that the conduct of Golden Age of Welsh was not "a factor of the resultant damages."

Plaintiffs filed suit on November 16, 2018, individually, and on behalf of their deceased father, alleging wrongful death and survival damages based on their assertions of substandard care provided their father while a patient at Golden Age of Welsh. On October 2, 2019, Golden Age of Welsh filed a motion for summary judgment "assert[ing] that Plaintiffs are unable to satisfy their burden of proof of resulting damages[.]" Plaintiffs opposed the motion for summary judgment and countered Defendant's motion with the affidavit of its expert witness, Dr. Thomas J. Zweber, M.D. (Dr. Zweber) supported by various certified medical records and other

documents. The trial court refused to consider Dr. Zweber's affidavit on the basis that he was not a Louisiana physician and therefore not qualified to testify in the matter. Based on that finding, the trial court granted summary judgment in favor of Golden Age of Welsh. Plaintiffs appeal asserting four assignments of error maintaining the trial court erred as a matter of law in applying the "locality rule"[1] as the basis to exclude Dr. Zweber's affidavit. Plaintiffs also assert the trial court erred in allowing Defendant to assert the "locality rule" which it first raised in its Reply Memorandum. Further, Plaintiffs maintain the trial court erred in dismissing their claims of medical malpractice where three Louisiana physicians testified establishing Defendant's specific breaches in the standard of care of Mr. Fontenot. Plaintiffs also assert they have presented genuine issues of material fact precluding summary judgment. For the following reasons we reverse the trial court judgment.

## Analysis

A judgment granting summary judgment is reviewed de novo on appeal "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. Regarding the burden of proof, La.Code Civ.P. art. 966(D)(1) provides that "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," the mover need only point to "the absence of factual support for one or more elements essential to the adverse party's claim[.]" If the moving party provides sufficient evidence to support the motion, the adverse party must then "produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not

---

[1]

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

   (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and *where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians **within the involved medical specialty***.

La.R.S. 9:2794A(1) (emphasis added).

2

entitled to judgment as a matter of law." *Id.* Thereafter, "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

*Thomas v. Dalal*, 20-65, pp. 4-5 (La.App. 3 Cir. 10/28/20), 306 So.3d 507, 510–11.

In support of its motion for summary judgment Defendant introduced the opinion of the Medical Review Panel. The three members of the Panel each reached the same conclusions which are set forth in their "Opinion and Reasons." The document states:

> It is the opinion of the Medical Review Panel that the evidence submitted does support the conclusion that the defendant, Golden Age of Welsh, LLC, failed to comply with the appropriate standard of care as charged in the complaint for the following reasons:
>
> There was no documentation that they followed their care plan insofar as weekly skin evaluations. There was a (sic) issue of fact as to the documentation of the size, number and description of the wounds between the records of Lake Charles Memorial Hospital, Jennings American Legion Hospital and Golden Age of Welsh. There was no deviation from the standard of care insofar as the ventilator issues and respiratory status. In regard to the events of November 2, 2014, there appears to be a breach when Golden Age of Welsh delayed transfer to the Emergency Room when Mr. Fontenot was experiencing some respiratory distress.
>
> It is the opinion of the Medical Review Panel that the evidence does not support the conclusion that the conduct of defendant, Golden Age of Welsh, LLC, complained of was a factor of the resultant damages for the following reasons:
>
> The wounds were probably not preventable due to his multiple problems, including diabetes, vascular disease and generalized debility. In the hospital evaluation of November 3, 2014, his attending physician documented that the plaintiff was "not as sick as he has been in the past" and "way more alert," so there was no loss of executive function and no apparent sequels. The care Mr. Fontenot received at Golden Age did not hasten his death.

In opposition to the motion for summary judgment Plaintiffs submitted the affidavit of their expert, Dr. Zweber, who is board certified in Physical Medicine, Rehabilitation, and Electrodiagnostic Medicine. He has served as the Medical Director of two regional acute rehabilitation centers, one in California and one in

Vermont. Dr. Zweber's credentials were not called into question. Dr. Zweber agrees with certain of the Panel's findings of malpractice but disagrees with its conclusion that Golden Age of Welsh's malpractice did not cause and/or hasten Mr. Fontenot's demise. He also disagreed with the Panel's finding that there was no "deviation from the standard of care insofar as the ventilator issues and respiratory status" was concerned. Dr. Zweber attested that his opinions were arrived at after examining Mr. Fontenot's certified medical records including the records of Acadian Ambulance, Golden Age of Welsh, Jennings American Legion Hospital, Lake Charles Memorial Hospital, Post Acute Medical, and LaSalle Hospital. He also relied on a DHH Nursing Home Survey Report, Golden Age of Welsh's Nursing Services Policy and Procedure for Long Term Care, Golden Age of Welsh's Job Descriptions, the Panel Opinion, and the Discovery Responses with attachments provided by Golden Age of Welsh. We find Dr. Zweber's expert opinion creates genuine issues of material facts which cannot be resolved on summary judgment.

Dr. Zweber set forth at length the standards of care to be followed by Golden Age of Welsh in caring for Mr. Fontenot given his medical conditions and observable difficulties when he was under their care. He set forth Mr. Fontenot's "known risk factors" when he was admitted to Golden Age of Welsh. He opines that "[t]he MDS assessments, E-tars, departmental skin notes, skin inspection reports, wound assessments, and plan of care for the prevention of pressure ulcers [were] substandard." He further states "Medical records show Mr. Fontenot developed multiple *avoidable pressure ulcers*; multiple *healthcare acquired resistant respiratory bacteria*; protein *malnourishment*, CHF, and acute renal failure on October 7, 2014" (emphasis added). He explained that the certified medical records he examined showed the following:

> Medical records show Mr. Fontenot was transferred to the emergency department at Jennings American Legion Hospital. It was determined that he was now in acute renal failure . . . He was anemic,

4

malnourished, and now had 3 different healthcare acquired resistant bacteria in his sputum, that were later identified as Pseudomonas aeruginosa, Providencia stuartili, and MRSA. Mr. Fontenot was stabilized and then transferred later that evening to the ICU at Lake Charles Memorial Hospital.

Dr. Zweber then states that when Mr. Fontenot was discharged to Golden Age of Welsh on October 15, 2014, "*Golden Age's nursing staff failed to implement a plan of care to manage and treat* Mr. Fontenot's existing pressure ulcers and prevent further development and/or progression of existing pressure ulcers" (emphasis added). He points out that seven days later, on October 22, 2014, Mr. Fontenot was again transferred to Lake Charles Memorial Hospital "with a new pressure ulcer to his sacrum and multiple worsening pressure ulcers to his left foot, including a 3cm x 3cm stage III with black eschar." Mr. Fontenot spent another week in the hospital and was returned to Golden Age of Welsh on October 29, 2014. By November 2, 2014, Mr. Fontenot was experiencing "acute respiratory distress." Dr. Zweber states that the medical records show "*Golden Age's staff did not properly monitor Mr. Fontenot's respiratory status, properly adjust his ventilator settings, and timely notify his physician, or send him to the emergency department for evaluation and treatment*" (emphasis added). He further opines that:

> A reasonable Plan of Care was not implemented and the physician's orders for the prevention of pressure ulcers were not followed. This lead (sic) to the rapid progression of multiple areas of pressure related skin breakdown by October 7, 2014. These ulcers were not Mr. Fontenot's fault and certainly were not unavoidable.

Dr. Zweber concludes "[w]ithin a high degree of medical certainty" that (emphasis added):

> Mr. Fontenot's care at Golden Age of Welsh was below the expected standard of care. Failing to provide the necessary treatment plan for Mr. Fontenot *caused* multiple pressure ulcers, acute respiratory failure, acute renal failure, systemic sepsis, unnecessary pain, and rapid deterioration in his already fragile health condition.

In summary, Dr. Zweber opines:

Within high medical probability the negligent care that prevented Mr. Fontenot from achieving a better outcome was a major contributing factor to his worsening health condition which hastened his deterioration and contributed to his death.

Defendant's objection to this expert's testimony was based on its interpretation of the Louisiana locality rule embodied in La.R.S. 9:2794(A)(1). Nevertheless, in its Motion for Summary Judgement, Golden Age of Welsh repeatedly referred to the *specialized nature* of the care given to this patient. He was transferred to that facility from another nursing home because his condition required *specialized* care. Indeed, as Dr. Zweber also noted, this case involves national standards for nursing homes engaging in the kind of specialized care needed for Mr. Fontenot's condition. Defendant asserts on summary judgment that Golden Age of Welsh offers specialized care to Louisiana citizens and the region beyond, and that it fully complies with national medicare requirements. These allegations were not disputed. Under the provisions of La.R.S. 9:2794(A)(1)(emphasis added), the standard of care is determined according to "the involved medical specialty" and is not limited by the locality rule as provided in the first part of paragraph (A)(1).

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

*(1)* The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and *where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians **within the involved medical specialty**.*

In *Ardoin v. Hartford Acc. & Indem. Co.*, 360 So.2d 1331, 1335 (La.1978) (emphasis added) the Louisiana Supreme Court explained:

In contrast with the standard of conduct and burden of proof affecting practitioners not engaged in a specialty, the statute further provides that where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff "*has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.*" Thus, the legislature has provided guidance in applying the Civil Code's general principle of fault to the acts of a particular medical specialist by directing that they be measured by the degree of care ordinarily practiced by others involved in the same specialty. Unlike the statute's standard of care for practitioners not engaged in a specialty, the specialist's duty is not governed by the professional standard within a particular locality or community.

We find the trial court legally erred in applying the "locality rule" to exclude Dr. Zweber's affidavit. As the Defendant maintained in support of its motion for summary judgment, this was specialized care. Thus, the locality rule has no application here and Plaintiffs' expert should not have been rejected on that basis.

We also find there is yet a stronger basis on which to reverse the trial court. The only issue raised in Defendant's motion for summary judgment was the issue of causation. Defendant emphatically set forth the sole basis for its motion for summary judgment stating: "Specifically, and as explained in greater detail in the accompanying Memorandum in Support, Defendant asserts that Plaintiffs are unable to satisfy their burden of proof of resulting damages."

The dissenting judge in this case, like Defendant, asserts that "the same knowledge needed to determine standard of care is also needed to determine causation. As such, it is inconceivable that an expert who is not competent to testify to standard of care, the first prong of the medical malpractice burden of proof, would be considered competent to testify to the third prong—causation." Judge Savoie maintains that La.R.S. 9:2794(A)(3), which sets forth causation, is covered by the provisions of (A)(1) governing proof of the standard of care. This interpretation is at odds with the settled jurisprudence. Paragraph (A)(1) provides for circumstances in which either the locality rule or the medical specialty rule applies. Louisiana

7

Revised Statutes 9:2794(A)(3) provides the third element of proof in a medical malpractice action, *causation*:

> That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Louisiana jurisprudence holds that "causation is not explicitly included among those elements listed in La.R.S. 9:2794 for which proof must be made through expert medical testimony[.]" *Bozarth v. State LSU Med. Ctr./Chabert Med. Ctr.*, 09-1393 p. 12 (La.App. 1 Cir. 2/12/10), 35 So.3d 316, 325.

> In *Samaha v. Rau,* 2007–1726 (La.2/26/08), 977 So.2d 880, the supreme court explained at length the burden of proof and standard of review in medical malpractice cases:
>
>> To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
>>
>> *Although causation is not explicitly included among those elements for which proof must be made through expert medical testimony*, typically expert testimony is required to prove causation when the resolution of that issue is not a matter of common knowledge.

*Tillman v. Eldridge*, 44,460 p. 12 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 77 (emphasis added).

The locality rule articulated in La.R.S. 9:2794(A)(1) has no application to an expert witness testifying as to causation. The determinations of the appropriate standard of care and whether that standard was breached are entirely separate elements in a medical malpractice action from the element of causation. There is strong evidence submitted in this case that Golden Age of Welsh breached the standard of care in its handling of the late Mr. Fontenot. As we have already noted, the Medical Review Panel found it breached the standard of care. Their testimony

8

was put forward at the motion for summary judgment by Defendant. They were all local physicians whose testimony is admissible under the provisions of La.R.S. 40:1231.8(H). Thus, *even if* the locality rule applied here in determining the standard of care, the statutory requirement is met, i.e., local doctors testified to a breach of the local standard of care.

For the reasons stated, we reverse the trial court's ruling granting summary judgment and remand the matter for further proceedings. All costs of this appeal are assessed against Defendant.

**REVERSED**.

TINA FONTENOT, ET AL.

VERSUS

GOLDEN AGE OF WELSH, LLC

**********

**SAVOIE, J. dissents and assigns written reasons.**

I respectfully disagree with the majority opinion. Golden Age of Welsh objected to the filing of Dr. Zweber's affidavit by the Plaintiffs, in accordance with La.Code. Civ.P. art. 966(D)(2). The trial court granted the objection, leaving Plaintiffs without evidence to support their claims on summary judgment. Consequently, the trial court granted Golden Age of Welsh's motion for summary judgment and dismissed Plaintiffs' claims. The exclusion of an affidavit in a motion for summary judgment proceeding is reviewed for abuse of discretion. *See Gutierrez v. Baldridge*, 10-1528 (La.App. 3 Cir. 5/11/11), 65 So.3d 251.

The trial court granted Golden Age of Welsh's objection to Dr. Zweber's affidavit based on the "locality rule." As applied to the present case, the "locality rule" requires that while "[n]urses who perform medical services are subject to the same standards of care and liability as are physicians[,] [t]he nurse's duty is to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case." *Benefield v. Sibley*, 43,317, p.6 (La.App. 2 Cir. 7/9/08), 988 So.2d 279, 286, *writs denied*, 08-2162, 08-2210, 08-2247 (La. 11/21/08), 996 So.2d 1108.

Plaintiffs argue that the locality rule does not apply in this case because the issue is not Golden Age of Welsh's standard of care but rather causation of Mr. Fontenot's injuries. Plaintiffs argue that the "locality rule" does not apply to causation, and the majority agrees. Louisiana Revised Statutes 9:2794(A) states that the burden of proof in a medical malpractice action is on the plaintiff to prove:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Causation is codified in the third provision, which specifically states that "*this* lack of knowledge or skill or the failure to exercise *this* degree of care the plaintiff suffered injuries that would not otherwise have been incurred." *Id*. (emphasis added). It is clear that the same knowledge needed to determine standard care is also needed to determine causation. As such, it is inconceivable that an expert who is not competent to testify to standard of care, the first prong of the medical malpractice burden of proof, would be considered competent to testify to the third prong – causation. This is especially true in light of the wording used in the statute.

Therefore, I would find that the trial court did not abuse its discretion in excluding the affidavit of Dr. Zweber at the hearing on the motion for summary judgment. It follows that due to a lack of Plaintiffs' evidence, the trial court did not err in granting Golden Age of Welsh's motion for summary judgment.